978 F.2d 714
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald Paul CLARK, Plaintiff-Appellant,
v.
Kraig CLAY; John McSwain; and Whatcom County, Defendants-Appellees.
 No. 91-35688.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 9, 1992.*
Decided Oct. 27, 1992.
 
 Before HUG, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ronald Paul Clark appeals from the district court's orders granting summary judgment in favor of defendants on his section 1983 claim and dismissing his state law negligence claim for lack of jurisdiction in his suit against two jail guards and Whatcom County. We reverse and remand.
 
 FACTS
 
 3
 On October 13, 1985, Ronald Paul Clark, a citizen of Canada, was incarcerated in the Whatcom County jail in Bellingham, Washington. Kraig Clay, a guard, entered the day room where Clark was watching television and informed Clark that he had visitors. In preparation for taking Clark to the visiting area, Clay shackled him by chaining his ankles together and handcuffing both of his hands to a body belt.
 
 
 4
 Clay left the room and some minutes later returned with another guard. Clark asked if he would have a hand free so that he would be able to use the phone in the visiting area, to which Clay responded that he would not. Clark stated that he would not go to the visiting room and asked to see a supervisor. At this juncture, according to Clark's deposition testimony, Clay became "quite animated" and told Clark he was going back to his cell. (Certified Record ("C.R.") 114 Ex. A (Clark Dep.) at 44.) Clark, still wanting to see a supervisor, became frightened and sat down on a mattress in the corner of the room.
 
 
 5
 Clay again left the room and a short time later returned not with a supervisor but with three other guards, including the other individual defendant in this action, John McSwain. Clay removed his glasses, which Clark interpreted as a "strong indicator" of trouble and a sign that Clay was in a "combative mode." (Id. at 51, 53). Clay took Clark's left arm and McSwain took his right arm; Clark heard one of the guards say, "We're going to move you." (Id. at 58.) Clark stated at his deposition that after the guards took his arms he made no attempt to stand up, but rather adopted a "passive" demeanor, allowing his legs "to be brought up freely." (Id. at 58-59).
 
 
 6
 The next thing Clark remembers is waking up on the concrete floor some six feet from where he was being lifted with his head in a pool of blood. As he came to, he heard McSwain repeating, "I seen him do it, I seen him make the move." (Id. at 71.) According to Clark, these remarks may have been an attempt by McSwain to whitewash the guards' actions. Clark was taken to the emergency room, where he received 21 stitches for a "crush type" laceration on his upper forehead which exposed his skull for about three-eighths of an inch. (C.R. 125 Ex. 1 at 7.) He was released later that day.
 
 
 7
 The parties have different versions of the events in question. Clark does not know how he ended up on the floor, but stated at his deposition:
 
 
 8
 I know that I didn't jump up in the air and land on the floor. I know that. I know that I didn't step over to where I became conscious to get over to that area of the floor, I know that. I recall that I didn't try to walk anywhere, and when I woke up, I would have had to walk over there....
 
 
 9
 (Id. at 62-63.) Clay, at his deposition, described the incident as follows:
 
 
 10
 When I grabbed [Clark]'s arm, pulled him up, he pulled back, didn't want to go, was resisting. I turned his arm around behind him. He was struggling at that time.... [A]ll of a sudden, it seemed to me his body relaxed, as if, okay, give up, or, whatever, and then down he went.
 
 
 11
 (Clay Dep. at 43-44.)[1]
 
 
 12
 McSwain maintains that he does not recall how Clark ended up on the ground:
 
 
 13
 I know that I was helping him up in this manner, and [Clay] was helping him up in this manner, and then that he went over onto the ground, but I don't remember how he ended up on the ground.
 
 
 14
 ....
 
 
 15
 I think I still had a hold of his arm, but I don't remember--yeah, I think I still had a hold of his arm.
 
 
 16
 (McSwain Dep. at 41-42.) While Clay described Clark as "agitated" during the confrontation with guards, (C.R. 109 Ex. 2 (Clay Dep.) at 34), McSwain stated that Clark was not "say[ing] anything," but "[j]ust sitting there very tense," (id. Ex. 3 at 37).
 
 
 17
 The emergency room report reflects still other versions of the incident, noting that while Clark stated upon his arrival simply that he had fallen on the concrete, the deputies who brought him to the hospital told medical personnel that Clark had been "involved in a struggle with deputies, was pushed and fell striking his head." (C.R. 2 Ex. B.)
 
 
 18
 On October 16, 1987, Clark filed a pro se prisoner's civil rights complaint under 42 U.S.C. § 1983, alleging that Clay had violated his civil rights by "slamming/smashing [his] body & head into the [c]oncrete [f]loor." (Excerpts of Record ("E.R.") at 2.) The original complaint sought damages of $2.8 million as well as out-of-pocket medical expenses and punitive damages. In September 1988 the court appointed counsel to represent Clark.
 
 
 19
 A first amended complaint was filed on April 26, 1989, which added McSwain and the county as defendants as well as a cause of action for negligence under Washington state law. It alleges jurisdiction of the negligence claim both on account of diversity and as a pendent state claim and damages "in an amount to be proven at trial." (E.R. at 8.) The parties consented to trial before a magistrate judge.
 
 
 20
 At a hearing on August 14, 1990, Magistrate Judge Sweigert orally granted defendants' motion for summary judgment as to the section 1983 claim and ordered further briefing on the issue of diversity.[2] On January 22, 1991 he issued an order dismissing the remaining negligence claim for lack of jurisdiction. The order states in pertinent part:
 
 
 21
 Assuming, arguendo, that defendants negligently dropped plaintiff causing a gash on his head, the record indicates he was treated as an outpatient at the hospital emergency room for two hours and released with no apparent residuals; x-rays were normal and the medical evidence indicates that plaintiff's present complaints of headaches are not in any way connected to trauma. Plaintiff can have no good faith claim for medical expenses or wages, past, present, or future, nor for diminished earning capacity. Plaintiff's only possible claim is for pain and suffering and on the record before the Court, such claim could not in good faith exceed $10,000 [the jurisdictional amount in effect when Clark filed his suit].
 
 
 22
 (E.R. at 20.) Although the order is not explicit, the court apparently declined to exercise pendent jurisdiction over the state negligence claim. Judgment was entered for defendants on January 22, 1991. Clark's motion for reconsideration was denied on April 30, 1991. This appeal followed.
 
 DISCUSSION
 I. SECTION 1983 CLAIM
 
 23
 We review a district court's grant of summary judgment de novo. High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570 (9th Cir.1990). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 
 24
 In this case, there is substantial conflict in the parties' accounts of how Clark ended up on the concrete floor at the Whatcom County jail with a large gash in his head. Depending upon whom the trier of fact believed, it might reasonably be inferred from the deposition testimony and the nature of the injury that Clay and McSwain used unwarranted force on Clark. Because the resolution of this issue is central to Clark's civil rights claim and involves credibility determinations and the weighing of evidence, summary judgment was not appropriate.
 
 II. DIVERSITY JURISDICTION
 
 25
 We review de novo the district court's ruling on diversity jurisdiction. United States v. Moncini, 882 F.2d 401, 403 (9th Cir.1989).
 
 
 26
 Prior to its amendment in 1988, 28 U.S.C. § 1332(a) provided for federal jurisdiction of "civil actions where the matter in controversy exceed[ed] the sum or value of $10,000, exclusive of interest and costs; and [was] between ... citizens of a State, and foreign states or citizens or subjects thereof." Clark's suit was initiated in 1987, so it is this pre-1988 version of section 1332(a) that applies. D'Arbois v. Sommelier's Cellars, 741 F.Supp. 489, 490 (S.D.N.Y.1990).
 
 
 27
 Because Clark is a citizen of Canada, diversity jurisdiction is proper in this case so long as the $10,000 jurisdictional minimum is met.[3] Normally, the amount in controversy is determined from the face of the pleadings. Pachinger v. MGM Grand Hotel-Las Vegas, 802 F.2d 362, 363 (9th Cir.1986). The sum claimed by plaintiff controls so long as the claim is made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 289.
 
 
 28
 The first amended complaint alleges damages "in an amount to be proven at trial." Appellant has asserted elsewhere, however, that his claim amounts to more than $10,000. (See, e.g., C.R. 132 at 3.) Aside from the immediate trauma associated with the injury, Clark claims that he suffers from severe headaches and memory loss. Although the magistrate judge concluded from his own review of the medical evidence that Clark's injuries were not substantial, there is evidence to support Clark's claim--including the hospital records and a photograph of the injury--such that it cannot be said as a matter of legal certainty that Clark will not recover $10,000. The negligence claim should therefore be reinstated and Clark given leave to amend his complaint to allege the jurisdictional amount.
 
 III. DISMISSAL OF PENDENT CLAIM
 
 29
 Since Clark's negligence claim meets the requirements for diversity jurisdiction, we do not need to reach the issue of the district court's failure to exercise pendent jurisdiction over that claim.
 
 
 30
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This and the following excerpt from the McSwain deposition are quoted from appellant's brief on appeal
 
 
 [2]
 There is evidently no transcript of the August 14, 1990 proceeding
 
 
 [3]
 Although the current version of section 1332(a) does not permit a suit between a citizen and a permanent resident alien who reside in the same state--the apparent situation here--such suits were permitted under the pre-1988 statute. See Arai v. Tachibana, 778 F.Supp. 1535, 1540 (D.Haw.1991)